UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS BUFFA,

                      Case No. No. 19-13282

          Plaintiff,           District Judge Victoria A. Roberts

v.                       Magistrate Judge R. Steven Whalen

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff Thomas Buffa brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [ECF No. 14] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings, and that Defendant's Motion for Summary Judgment [ECF No. 18] be DENIED.

## I.   PROCEDURAL HISTORY

On August 17, 2016, Plaintiff filed an application for DIB, alleging disability as of

-1-

November 16, 2012.[1]  ECF No. 8-5, PageID.238 (Tr. 210).[2]  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on May 31, 2018 in Oak Park, Michigan (Tr. 102).   Administrative Law Judge ("ALJ") Patricia S. McKay presided.   Plaintiff, represented by attorney William V. Biebuyck, testified (Tr. 109-130), as did Vocational Expert ("VE") Scott Silver (Tr. 131-135).  On October 1, 2018, ALJ McKay determined that Plaintiff was not disabled (Tr. 90-98).

On September 19, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 1-7).   Plaintiff filed suit in this Court on November 7, 2019.

## II.  BACKGROUND FACTS

Plaintiff, born November 24, 1953, was 64 at the time of the  administrative decision (Tr. 98, 210).  He completed 12th grade and worked previously as a truck driver (Tr. 237).  He alleges disability as a result of anxiety, panic attacks, hypertension, arthritis, vertigo, glaucoma, hyperlipidemia, dizziness, pain, and neck and back problems (Tr. 236).

### A.  Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by amending the alleged onset of disability date to August 12, 2015* (Tr. 106).

Plaintiff then offered the following testimony before the ALJ:

---

[1]The alleged onset of disability date was later amended to August 12, 2015 (Tr. 90).

[2]The administrative transcript which includes the hearing testimony, the ALJ's determination, and medical evidence is henceforth cited by transcript page number.  ECF No. 8.

His former job as a bread delivery truck driver required him to lift up to 100 pounds (Tr. 111).  He stopped working on November 16, 2012 when his employer's company was sold (Tr. 111).  His work activity after that was limited to a three-week stint in 2015 as a seasonal driver for UPS and two weeks performing work related to "car parts" for Macomb Community College (Tr. 111, 121).

Due to body pain, Plaintiff was unable to sit for more than 20 minutes or stand for more than five (Tr. 112).  He was unable to lift more than 10 pounds or walk for more than one block without requiring a five-minute rest (Tr. 112-113).  He spent most of his waking hours in a reclining chair or lying down (Tr. 113).  On a scale of one to ten, he typically experienced level "seven" pain (Tr. 113).  He experienced medication side effects including temporary dizziness after taking Xanax and sleepiness from Flexeril (Tr. 114).  He experienced vertigo on a daily basis (Tr. 114).  He experienced panic attacks about three times a week (Tr. 116).  He held a current driver's license but had not driven since a 2016 "fender bender" (Tr. 117).

He did not have health insurance at the time of the hearing (Tr. 121).  Plaintiff's treatment for back pain was limited to Flexeril and Motrin 800 (Tr. 123).  He had not received steroid injections (Tr. 123).  He took Meclizine (Antivert) for vertigo and Xanax for panic attacks (Tr. 123).  He was able to perform self care tasks but relied on his wife for all laundry, cooking, and cleaning chores (Tr. 124).  He had reduced his smoking from three packs to 10 cigarettes daily (Tr. 126).  He did not experience current left shoulder problems (Tr. 127).  His

glaucoma condition was stable with medication  (Tr. 127).  Due to the side effects of Xanax

and Flexeril, he was unable to return to his job as a driver (Tr. 129).

On a typical day, Plaintiff arose, drank coffee, played computer games for 20 minutes;

watched television; ate lunch,, reclined, watched television and ate dinner  (Tr. 117).  He

seldom left home due to his dislike of crowds (Tr. 117).  He stood 5' 10" and weighed 196

pounds (Tr. 118).  He was right-handed (Tr. 118).  He and his wife lived in a second floor

apartment (Tr. 119).

### B.  Medical Records

#### 1.  Records Related to Plaintiff's Treatment[3]

September, 2012 records by Robert Aquino, D.O. note that "waxing and waning"

lumbar spine pain was relieved by Flexeril (Tr. 337).  August, 2013 treating records by Dr.

Aquino  note refills of Flexeril and Xanax (Tr. 313).  Plaintiff reported that he began a job

delivering bread the previous week (Tr. 313).  Anxiety was deemed well controlled (Tr. 316).

Treating records from September, 2012 forward note a diagnosis of benign positional vertigo

(Tr. 337).

In September, 2016, Plaintiff reported a history of vertigo (Tr. 403).  His medications

included a prescription for Antivert[4] (Tr. 404).  December, 2016 records likewise note a

---

[3]

Records pertaining to Plaintiff's condition prior to the amended alleged onset of
disability date of August 12, 2015 are included for background purposes only.

[4]

Antivert (generic name Meclizine) "is an antihistamine that is used to prevent and
treat nausea, vomiting, and dizziness caused by motion sickness. It may also be used to

prescription for Antivert (Tr. 407). Plaintiff denied syncope (Tr. 406). June, 2017 records note a prescription for Antivert but that Plaintiff denied current syncope (Tr. 414-415). He reported that he walked a mile every day on a treadmill (Tr. 414). August, 2017 records note a prescription for Antivert (Tr. 419). September, 2017 records note that Plaintiff was nervous and anxious (Tr. 422). His diagnoses included anxiety and vertigo (Tr. 422). January, 2018 records note the conditions of anxiety and vertigo (Tr. 426). Plaintiff denied new complaints or current syncope (Tr. 426). In March, 2018, Plaintiff reported that the condition of vertigo was worsening (Tr. 430). April, 2018 records made after a fall and nose injury note "benign paroxysmal positional vertigo" (Tr. 435-438).

## 2. Non-Treating Records

In October, 2016, Jose Mari Jurado, M.D. performed a consultative examination on behalf of the SSA (Tr. 392-401), noting Plaintiff's report of neck, left shoulder, and low back pain (Tr. 392). Plaintiff reported that he could sit for 35 minutes, stand for 15, and walk for 10 (Tr. 392). He did not require the use of a cane (Tr. 392). Plaintiff reported that he did not experience headaches, dizziness, or double vision (Tr. 392). Vision in both eyes with glasses was 20/30 (Tr. 393). Muscle tone and strength in all extremities was normal (Tr. 393). Plaintiff demonstrated a limited range of lumbar spine motion (Tr. 396). He was able to perform a partial squat (Tr. 394). Dr. Jurado found that "[r]egarding ability to bend, stoop,

---

reduce dizziness and loss of balance (vertigo) caused by inner ear problems." https://www.webmd.com/drugs/2/drug-5337/antivert-oral/details (last visited December 15, 2020).

carry, push, and pull," Plaintiff would "have some balance issues" (Tr. 394). Dr. Jurado found that in terms of "functional ability to work . . . limitations [were] mild to moderate" (Tr. 394). He noted positive Tinel's signs in both hands (Tr. 394) and a "slow shaky tandem gait" with "balance issues" (Tr. 399).

The same day, Terrance Mills, Ph.D. performed a consultative psychological assessment, noting Plaintiff's report of anxiety since 1976 (Tr. 386). He reported that as a result of taking Xanax three times a day, he had not experienced a panic attack in the past three months (Tr. 386). The attacks were characterized by shortness of breath, leg weakness, dizziness, and cold sweats (Tr. 386). Plaintiff reported that he felt "a little sad" because he was unable to work and as a result, stayed in bed longer each morning (Tr. 386). He reported that he was unable to find another job after his employer closed in 2012 (Tr. 387). He denied having friends but reported that his wife and family were supportive (Tr. 387). Dr. Mills found no difficulty carrying out one-step instructions (Tr. 389). Dr. Mills noted the impressions of anxiety, panic attacks, and mild depression (Tr. 388).

In November, 2016, Kathy A. Morrow, Ph.D. performed a non-examining assessment of Plaintiff's psychological condition, finding mild limitation in activities of daily living and moderate difficulty in maintaining concentration, persistence, or pace and social functioning (Tr. 142). The same month, B. Cochran, M.D. found that Plaintiff's physical impairments were "non-severe" (Tr. 140-141).

### 3. Records Submitted After the ALJ's October 1, 2018 Determination

December, 2018 records note Plaintiff's report of dizziness and a prescription for Antivert (Tr. 50-52). In March, 2019, he again reported dizziness (Tr. 42-44). He was referred for an "inner ear dizzy screen" in April, 2019 (Tr. 42). Testing showed mild hearing loss with normal middle ear function (Tr. 39). As of May, 2019, Plaintiff continued to take Antivert (Tr. 46). He underwent a balance function test the same month (Tr. 30).

### C. Vocational Testimony

Citing the *Dictionary of Occupational Titles* ("*DOT*"), VE Scott Silver classified Plaintiff's past work as a driver as semiskilled and exertionally medium (exertionally heavy as performed)[5] (Tr. 131, 309).

ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [M]edium exertion, but there's non-exertional limitations as well. This person could frequently climb stairs or crouch or crawl or kneel or stoop or bend but he's not able to work near hazards, so he's not able to climb any ladders, ropes or scaffolding, work at unprotected heights or around dangerous moving

---

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

machinery.  Also he would be best limited to work that's low stress, so he's working at his own pace as opposed to a production rate or where his duties are independent of coworkers.  And he can tolerate only occasional interaction with coworkers, supervisors and the public and the work should be simple, routine or repetitive . . . .  Could that person perform the past job that you've classified for us? (Tr. 132).

The VE testified that the restriction to unskilled work precluded Plaintiff's past relevant work but would allow for the unskilled, exertionally medium work of a hand packager (667,000 positions in the national economy); laborer (2,197,000); and cleaner (42,000) (Tr. 133).  He testified that the need to be off task more than 10 percent of the workday would be work preclusive (Tr. 134).

### D.  The ALJ's Determination

 Citing the medical transcript, ALJ McKay found that Plaintiff experienced the medically determinable impairments of "degenerative disc disease of the lumbar spine with history of lumbago; history of anxiety/generalized anxiety disorder; history of glaucoma; history of high cholesterol; history of hypertension; history of vertigo; history of left wrist fracture; and history of inguinal hernia," but found through the date last insured for DIB of March 31, 2018, none of the impairments created significant work-related impairment for 12 consecutive months or more (Tr. 92).

The ALJ discounted Plaintiff's professed degree of physical and psychological limitation.  She noted that the treating records created in 2016 and 2017 showed normal neurological findings, full muscle strength, and a normal gait (Tr. 94).  She cited the treating records showing that Plaintiff was walking one mile every day (Tr. 95).  She cited Dr.

Jurado's October, 2016 observation of good coordination and muscle tone (Tr. 94).

The ALJ cited Plaintiff's wife's September, 2016 report that Plaintiff was able to drive (Tr. 95). The ALJ noted that while Plaintiff reported worsening vertigo in March, 2018, the condition was "reasonably well controlled with medication" and that Plaintiff was unable to show that the condition created significant work-related limitations for a 12-month period (Tr. 95). As to the condition of glaucoma, the ALJ noted that Plaintiff denied vision changes as of August, 2017 and that eye examinations had been unremarkable (Tr. 95).

The ALJ found that Plaintiff did not experience even mild psychological limitation (Tr. 96-97). She noted that Plaintiff's allegations of significant social anxiety and concentrational limitations were undermined by his wife's September, 2016 report that he was able to shop, socialize with friends, drive, and play games (Tr. 96-97). The ALJ noted that the record did not contain "any mention of distractibility" (Tr. 97).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla

of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V. ANALYSIS

Plaintiff disputes the ALJ's determination that he did not experience significant work-related impairments, arguing that the medical records "document continued complaints of pain, anxiety, and vertigo . . ." *Plaintiff's Brief,* ECF No. 14, PageID.494-497. He contends that the ALJ's Step Two determination of non-disability relies on an erroneous reading of Dr. Jurado's consultative findings. *Id.* at 495.

At Step Two, an "impairment or combination of impairments ... [is] found 'not severe' ... when medical evidence establishes only a slight abnormality or [ ] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856,*3 (1985). "In the Sixth Circuit, the severity determination

-11-

is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. February 22, 2008)(*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*quoting Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985)). 20 C.F.R. §§ 404.1522(a) and 416.922(a) define a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." *See also* SSR 85-28, supra, at *3 ("Basic work activities" refers to walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "seeing, hearing, and speaking;" and the capacity for "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and, "[d]ealing with changes in a routine work setting")*. Id.*

### A. Allegations of Pain, Anxiety

The ALJ cited treating records showing that Plaintiff did not require the use of a cane and demonstrated good muscle tone and strength in support of her finding that the condition of degenerative joint disease was non-severe (Tr. 94). She noted that Dr. Jurado's October, 2016 finding of normal muscle tone, no lumbar spine tenderness, and normal deep tendon reflexes supported the finding that the physical conditions did not create significant work-related limitations (Tr. 94).

The ALJ's findings regarding pain-related limitation are supported by my own review of the records. Plaintiff reported "no complaints" in September, 2016 (Tr. 403). March, 2017

records do not contain complaints of body pain (Tr. 411-413).  As of June, 2017, Plaintiff reported to a treating source that he was able to walk a mile every day on a treadmill (Tr. 414). August records note the absence of distress (Tr. 420).  January and March, 2018 records show that pain resulting from either degenerative disc disease and or lumbago was well controlled with medication (Tr. 426, 430).  I note that the ALJ erroneously stated that Dr. Jurado found that straight leg raising testing was negative, when in fact, Plaintiff demonstrated some degree of limitation (*compare* Tr. 94, 394).  However, this misstatement does not invalidate her finding that pain resulting from the degenerative condition did not create significant work-related limitation.   Substantial evidence generously supports the finding that Plaintiff did not experienced disabling pain.

The ALJ also found no work-related limitation resulting from the condition of anxiety (Tr.  96-97).  She noted that Plaintiff was able to play internet games, shop, get along with others,  demonstrate adequate memory skills, and perform self care activities (Tr. 96-97).  The ALJ observed that while Dr. Morrow found moderate limitation in social functioning and concentration, persistence, or pace,  Plaintiff's wife reported that Plaintiff was able to interact with others and that treating and examining sources found him pleasant and cooperative  with full orientation (Tr. 97).  The ALJ's finding that the condition of anxiety did not cause significant work-related limitation is also supported by the treating records repeatedly showing a normal mood and affect with good results from Xanax[6] (Tr. 412, 416, 419, 422, 425, 437).

---

[6]

I note that a scattering of the treating records state that Plaintiff appeared anxious but

B. **Vertigo/Allegations of Dizziness**

On December 21, 2020, this Court ordered supplemental briefing on the question of whether the condition of vertigo caused more than *de minimis* limitation for a period of at least 12 months.[7]  ECF No. 19.  In Plaintiff's supplemental brief, he reiterates that the evidence created before and after the ALJ's determination establishes that vertigo and/or dizziness causes significant work-related limitations.  *Plaintiff's Supplemental Brief,* ECF No.20, PageID.531.  He notes that his 2016 DIB application states that both vertigo and dizziness contributes to his disability.  *Id.*

In Defendant's supplemental brief, he argues that the objective evidence, medical opinion evidence, and subjective statements "all fall short of allowing Plaintiff to sustain his

_____

at the same appointment, exhibited a normal mood and affect (Tr. 412, 424, 432).  These seemingly contradictory records indicate that at worst,  while Plaintiff exhibited anxiety on occasion, it did not interfere with any of the basic work abilities of "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and, "[d]ealing with changes in a routine work setting"  SSR 85-28, *supra*, at *3.  None of the treating records suggest any level of limitation in these areas.

While the ALJ's finding that symptoms of anxiety did not cause a severe psychological impairment, as discussed below, she did not address the allegations of medication side effects due to Xanax.

[7]

Vertigo is described as "a sensation of feeling off balance." https://www. webmd.com/brain/vertigo-symptoms-causes-treatment#1.  (Last visited January 20, 2021).  "If you have these dizzy spells, you might feel like you are spinning or that the world around you is spinning." *Id.*  Vertigo, characterized by dizziness, is usually a symptom of an inner ear condition. *Id.* The Court also addresses Plaintiff's allegations of dizziness as a  Xanax side effect.

burden to demonstrate his vertigo was a severe impairment" for a 12-month period. ECF No.21, PageID.538.

Plaintiff offered the following testimony regarding the condition of vertigo and/or the medication side effect of dizziness:   He took Xanax to quell thrice-weekly panic attacks (Tr. 116).  He experienced the medication side effects of temporary dizziness after taking Xanax and sleepiness from Flexeril (Tr. 114).  Apparently independent of the medication side effects of dizziness, he experienced the vertigo on a daily basis (Tr. 114). He held a current driver's license but had not driven since being involved in a "fender bender" in 2016 (Tr. 117).

In finding that the condition of vertigo did not create significant work-related limitation, the ALJ acknowledged that Plaintiff continued to take Antivert for vertigo but found that the condition did not create more than *de minimis* limitation.  (Tr. 95).  She noted that Plaintiff's ability to drive (as reported in September, 2016 by his wife) undermined his claims (Tr. 95). She concluded  that 2016 and 2017 medical records showed that Plaintiff was "overall doing well," and was walking one mile a day (Tr. 95).  She concluded "[t]herefore," [he] has not exhibited limitations secondary to "vertigo" (Tr. 95).  She acknowledged that in March and April, 2018, Plaintiff reported that the vertigo was worse but found that "the evidence does not indicate that the . . . exacerbation [would] meet the durational requirement for the determination of a medically determinable impairment (Tr. 95-96).

The ALJ's rationale for finding no more than minimal work-related limitations from vertigo or dizziness as a medication side effect is problematic for multiple reasons.  While she

cited Plaintiff's wife's September, 2016 report that Plaintiff could drive, Plaintiff testified that he stopped driving the same year after a "fender-bender" (Tr. 117). Plaintiff testified that he stopped driving at some point between September, 2016 and the end of 2016 (which would be the last 15 months of the period under consideration), and that medication side effects from Xanax and Flexeril prevented him from driving (Tr. 129). The ALJ's finding that Plaintiff walked a mile every day is based on his one-time report that he was walking a mile on a treadmill every day (Tr. 414).

Apart from his testimony that he no longer drove, Plaintiff stated that he regularly experienced dizziness after taking Xanax (Tr. 114). Indeed, the common side effects of Xanax use include drowsiness, "clumsiness or unsteadiness," "difficulty with coordination" lightheadedness, "shakiness and unsteady walk," and "unsteadiness, trembling, or other problems with muscle control or coordination." https://www.mayoclinic.org/drugs -supplement/alprazolam-oral-route/side-effects/drg-20061040. (Last visited, January 13, 2021). Under SSR 16-3p, 2016 WL 1119029, at *7 (March 15, 2016), the ALJ must consider "[t]he type, dosage, effectiveness, and side effects of any medication" when "evaluating the intensity, persistence and limiting effects of an individual's symptoms." (punctuation altered); *See also* 20 C.F.R. 404.1529(c)(3)(same). The ALJ's summation of Plaintiff's allegations of limitation and medical evidence do not contain any mention of Xanax side effects (Tr. 94-87). Even assuming that Plaintiff failed to meet his burden at Step Two to show that vertigo resulting from a vestibular condition caused significant work-related limitation, the ALJ's failure to discuss,

much less weigh Plaintiff's allegations of the medication side effect of dizziness constitutes grounds for a remand.

The ALJ's summation of Dr. Jurado's October, 2016 consultative findings is also of concern (Tr. 94). To be sure, she permissibly concluded that Dr. Jurado's finding of normal muscle tone and the absence of lower extremity radiculopathy undermined Plaintiff's allegations of lumbar spine limitations (Tr. 94). However, she did not address the portions of Dr. Jurado's findings supporting the claims of vertigo/dizziness, including the finding of "balance issues" affecting the ability to "bend, stoop, carry, push, and pull" and "mild to moderate" work limitations (Tr. 394). While Dr. Jurado's accompanying neurologic and orthopedic "checklist" states that Plaintiff could bend, stoop, carry, push, and pull, the earlier portion of the report and final summation cautions that Plaintiff's exertional and postural abilities were compromised by balance problems (Tr. 394, 398). Dr. Jurado closed his report by noting a "slow shaky tandem gait" with "balance issues" (Tr. 399). The ALJ's summation of Dr. Jurado's findings omit his multiple references to balancing problems affecting both walking and postural activity.

The ALJ's accord of significant weight to Dr. Cochran's non-examining summation finding that Plaintiff did not experience any significant work-related impairment is problematic in and of itself (Tr. 96). First, Dr. Cochran's non-examining determination that Plaintiff did not experience work-related limitation does not acknowledge the balance problems observed at Dr. Jurado's consultative examination from one month earlier (Tr. 140). Dr. Cochran states only

that as of November, 2016, the treating records did not establish that "vestibular" problems were a medically determinable impairment (Tr. 140). Second, Dr. Cochran's November, 2016 conclusion did not have benefit of more recent records including a diagnosis of "benign paroxysmal positional vertigo" following a March, 2018 report of dizziness (Tr. 430, 435-438). In some instances, the adoption of earlier, non-examining findings over the newer, treating diagnoses constitutes grounds for remand. *See Brooks v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(remand based ALJ's adoption of non-examining source's earlier opinion over a more recent examining source opinion).

The ALJ did acknowledge the March and April, 2018 treating records and renewed diagnosis of vertigo  (Tr. 92).  An ALJ is not barred from according greater weight to the older records provided that she give some indication that she considered the more recent evidence. *Brooks*, 531 Fed.Appx. at 642 (*citing Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))(internal citations omitted).  Courts "require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Id.*  However, while the ALJ mentioned the March and April, 2018 treating records and renewed diagnosis of vertigo, her finding that Plaintiff had not established that he had experienced dizziness resulting from either a vestibular condition or a medication side effect for the 12-month durational period required by 42 U.S.C. §423(d)(1)(A) is undermined by the evidence from the relevant period repeatedly showing a diagnosis of vertigo, the continued use of Antivert, and Dr. Jurado's observations  (Tr. 404, 407, 410, 423,

431).   The ALJ's reliance on Dr. Cochran's older, non-examining findings, coupled with the failure to consider the side effects of Xanax, Dr. Jurado's actual findings, and the lack of consideration of Plaintiff allegations of dizziness as a medication side effect constitutes grounds for remand.   The fact that the treating records could constitute substantial evidence in support of the Step Two findings is of no import, given that the ALJ did not discuss either the allegations of medication side effects as required by § 404.1529(c)(3)(iv) or Jurado's observation of balance problems. *See* § 404.1529(c)(1)(after finding that a condition qualifies as a medically determinable impairment, ALJ must "consider all of the available evidence from your medical sources").   Here, after having found that Plaintiff experienced the medically determinable condition of anxiety, the ALJ was required to consider the allegations of medication side effects. *Id.* She did not.

The records created in the year after Plaintiff's March, 2018 report of the vertigo exacerbation contain some support for the finding that the condition caused some degree of work-related impairment for at least 12 months.[8]   In December, 2018, Plaintiff reported a

---

[8]   The evidence post-dating the administrative decision is subject to a narrow review by the court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). For a remand for review of the newer records under the sixth sentence of 42 U.S.C. § 406(g), the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of HHS*, 865 F.2d 709, 711 (6th Cir. 1988).

continued "spinning sensation"[9] (Tr. 50).  In March, 2019, Plaintiff reported dizziness (Tr. 42).

He reported that he had experienced vertigo for the past seven years, was taking medication for

the condition and admittedly, did not experience symptoms often (Tr. 41).   Nonetheless, in

April, 2019, Plaintiff was scheduled for a May 9, 2019 balance function test (Tr. 29).  May, 21,

2019 records state that Plaintiff experienced the condition of benign paroxysmal positional

vertigo since April 25, 2012 and that the condition was "active" (Tr. 16).

    In opposition to the motion for remand, Defendant's supplemental brief cites *Long v.*

*Apfel*, 1 F. App'x 326, 331 (6th Cir. January 9, 2001); *accord Higgs v. Bowen*, 880 F.2d 860,

863 (6th Cir. 1988), arguing that a claimant cannot merely report symptoms but must show

"'signs, symptoms, and laboratory findings'" to establish the presence of a severe impairment.

ECF No. 21, PageID.539.  Defendant cites the treating records for the relevant period which

show that Plaintiff denied dizziness on multiple occasions. *Id.* at 541-542.  Defendant contends

that Plaintiff has waived argument regarding the ALJ's rejection of his subjective complaints.

*Id.* at 540.

    As a threshold matter, Defendant's argument that the Plaintiff has waived argument

regarding the ALJ's discounting of his subjective complaints should be rejected.  Plaintiff's

application for benefits alleges that he was unable to return to work due to vertigo and dizziness

(Tr. 236).  In his motion for summary judgment, he notes that his "reported limitations [in]

---

    [9]Notably, Plaintiff did not have medical insurance for a significant portion of 2018
(Tr. 121).

standing, walking, and lifting were nearly identical in his consultative examination comments and testimony during his hearing." ECF No.14,PageID.495.  He argues that the ALJ improperly "disregarded them as exaggerations." *Id.*  In his supplemental brief, he cites his testimony that he experienced dizzy spells daily.   ECF No.20, PageID.534.   He argues that the ALJ "misconstrued the evidence" in rejecting his "statements" of limitation. *Id.* at 535.  Plaintiff's contention that his claims were improperly dismissed as "exaggerations"  constitutes a challenge to the rejection of the subjective allegations.  Moreover, Defendant addresses this portion of the ALJ's determination, arguing that the rejection of subjective claims was supported by substantial evidence. *Id.* at 539.

Defendant is correct that subjective complaints must be supported by "objective medical evidence from an acceptable medical source that shows . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . ." 20 C.F.R. § 404.1529.  The subjective symptoms "will not be found to affect [the] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."  § 404.1529(b).  Under § 404.1502(g) "medical signs" mean[] one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)" and "must be shown by medically acceptable clinical diagnostic techniques."

Defendant's contention that Plaintiff's  allegations of dizziness are not supported by "medical signs" is not well taken. In assessing the physical abilities, Dr. Jurado  noted at three

-21-

points in his consultative report that Plaintiff experienced balance problems which would affect both his exertional and postural activity (Tr. 394 at ¶¶ 3, 5, Tr. 399).  Defendant's statement that "[u]ltimately, when asked to assess Plaintiff's specific work-related functional limitations, Dr. Jurado did not indicate any restrictions with sitting, standing, bending, stooping, pushing, pulling, or climbing," ECF No. 21, PageID.547 (*citing* Tr. 398), reflects an incomplete and inaccurate reading of Dr. Jurado's findings.  While Dr. Jurado completed a checklist indicating that Plaintiff was able to "bend, stoop, carry, push, [and] pull," he tempered these findings by noting at the beginning and end of his report that Plaintiff would experience problems in both postural activities (Tr. 394) and walking  (Tr. 394, 399).  As discussed above, the ALJ's summation of Dr. Jurado's findings likewise fails to acknowledge the findings of exertional and postural limitation.

In summary, a remand is required for further proceedings. As noted above, the ALJ's mischaracterization of Dr. Jurado's findings does not constitute the only basis for remand. Assuming that substantial evidence would otherwise support the finding that Plaintiff did not experience significant symptoms of a vestibular condition until March, 2018, the ALJ erred by failing to address Plaintiff's allegations of the medication side effect of dizziness from Xanax. A remand for further fact-finding is particularly critical given that Plaintiff was 64 at the time of the ALJ's decision.  Medical-Vocational Guidelines Rule 202.06, directs a finding of "disabled" where a claimant is 55 years old or older, limited to exertionally light work, with skilled or semi-skilled past work with no transferable skills. 20 C.F.R. App'x 2, Supt. P, Pt. 404;

*see also* 20 C.F.R. § 404.1568(d)(4).

As to the material submitted after the administrative decision, I decline to determine if it meets the criteria for a Sentence Six remand given that grounds exist for remand independent of the latter-submitted material.[10]  If the District Court accepts my recommendation to remand for further proceedings, Plaintiff can present the newer evidence to the Administrative Judge upon remand.[11] *See Huber v. Comm'r of Soc. Sec.*, 2009 WL 111738, *11 (E.D. Mich. January 15, 2009)(claimant not barred from presenting new material upon remand for further proceedings on other grounds)(*citing Faucher v. Secretary of HHS*, 17 F.3d 171 (6th Cir. 1994)).

## VI.   CONCLUSION

For these reasons, I recommend that Plaintiff''s Motion for Summary Judgment [ECF No. 14] be GRANTED to the extent that the case is remanded to the administrative level for further proceedings, and that Defendant's Motion for Summary Judgment [ECF No. 18] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).

---

[10]The records show that Plaintiff underwent a May, 2019 balance function test the same month (Tr. 30).   However, he has not provided the results of the test.

[11]

Although the newer material post-dates Plaintiff's March 31, 2018 expiration of eligibility for DIB benefits, the ALJ may review the material for relevance to Plaintiff's condition prior to the expiration of benefits.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: January 25, 2021

-24-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 25, 2021 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager